**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MISTY DAWN BELL, individually and on behalf of all others similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 3:11-00203** |
| | ) | **Judge Sharp** |
| **PROVIDENCE COMMUNITY CORRECTIONS, INC., inclusive of its parents and subsidiaries,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the Court in this putative class action removed from state court is Defendant Providence Community Corrections, Inc.'s ("PCC's") Motion to Dismiss (Docket No. 11) and Motion to Strike (Docket No. 13). Those Motions have been fully briefed by the parties (Docket Nos. 12, 14, 16, 17 & 20). For the following reasons, Defendant's Motion to Dismiss will be granted, except with respect to Plaintiff's[1] claim under 42 U.S.C. § 1983, and its Motion to Strike will be denied.

## I. FACTUAL ALLEGATIONS

To place Defendant's arguments in context, the factual allegations in Plaintiff's Amended Complaint need only be recounted briefly. Those allegations, which must be accepted as true for present purposes, are as follows:

PCC is a private company which contracts with governmental entities, such as Rutherford

[1] Although Plaintiff Misty Dawn Bell purports to bring this action on behalf of herself and all others similarly situated, no class has been certified at this time and thus the Court refers to Plaintiff in the singular.

and Davidson County, Tennessee, to provide probation services. Plaintiff Misty Dawn Bell became subjected to PCC's monitoring when she was placed on probation for a term of 11 months and 29 days by the Rutherford Circuit Court in October of 2008.

The essence of Plaintiff's Amended Complaint is that PCC administers the probation programs in Davidson and Rutherford Counties in a manner which allows it to obtain maximum payments by probationers, payments which are often excessive or outright unlawful. In this regard, Plaintiff alleges that PCC charges probationers a $5.00 picture fee, even though such a fee is not authorized by law or under PCC's contract with Rutherford County. Additionally, PCC allegedly requires advanced payment of monthly supervision fees, and the fees collected are regularly in excess of the $45 allowed under the contract.

To enforce payments, PCC allegedly harasses and intimidates the probationers, including forcing some probationers to drop out of school, and threatening visits by a deputy sheriff and/or the possibility of incarceration for nonpayment. Despite the threats, some probationers are unable to make payments, and it allegedly is not uncommon for individuals placed on probation for 11months and 29 days to still be on probation three years later. This extended term allegedly works to PCC's benefit because it allows for further collection of unlawful and/or excessive fees, including supervision fees for each month that a probationer remains on probation.

As for Plaintiff, when she was placed on probation on October 10, 2008, she was ordered to pay fines and fees totaling $1,188.00. Approximately one year later, and despite Plaintiff having made significant payments to PCC, PCC indicated that Plaintiff still owed $1,738.00. Two years later, and a year after her probation would have normally run, Plaintiff had paid $1,030.00 in supervision fees and $627.00 in court costs. Nevertheless, in a receipt dated November 4, 2010,

PCC indicated that Plaintiff had a remaining balance of $1,418.00.

Plaintiff contends that her probation was extended due to the excessive fees charged by PCC, how PCC collected those fees, and how it attributed payments made on those fees. For example, PCC charged a supervision fee payment of $50.00 per month in advance, even though it was not entitled to collect fees in advance, and even though the fee should have only been $45.00 per month. PCC also charged a $5.00 picture fee, even though no such fee was authorized under the contract between it and Rutherford County. Additionally, Plaintiff claims that she paid more in fees than were credited on her account which, in turn, extended the term of her probation period.

At the time of filing her original Complaint in state court on January 25, 2011, Plaintiff was still on probation. She filed suit on behalf of herself and a class of similarly situated probationers who have had their probation monitored by PCC.

In her four-count Amended Complaint, Plaintiff asserts both federal and state law claims. She claims that PCC, through its tactics and while acting under color of state law, violated the takings and the due process clause of the Fifth and Fourteenth Amendment in violation of 42 U.S.C. § 1983. She also asserts that PCC, acting as a debt collector, violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, through its collection practices. Plaintiff further alleges that probationers subjected to PCC's monitoring are consumers under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.*, and that PCC's action violated that statute. Finally, Plaintiff sets forth "tort claims," in which she alleges that PCC's conduct constituted the "intentional, willful, and/or reckless violation[] of state law."

## II. MOTION TO DISMISS

In considering a Motion to Dismiss, the Court is to construe the Amended Complaint in the

light most favorable to the Plaintiff, accept the Amended Complaint's allegations as true, and draw all reasonable inferences in favor of the Plaintiff. DirecTv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). Nevertheless, in order to survive a Motion to Dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the Amended Complaint must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). That is, the Amended Complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Id. at 1974. In making the evaluation, the Court is limited to the Amended Complaint and exhibits attached thereto. Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001).

Even though the Court must accept as true all of the factual allegations contained in the Amended Complaint, the same does not hold true with respect to legal conclusions and, therefore, the Amended Complaint must include factual allegations to support the legal claims asserted. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

In this case, PCC moves to dismiss each of the four counts contained in Plaintiff's Amended Complaint. PCC argues that none of the counts set forth a claim upon which relief can be granted and all are barred by applicable statute of limitations.

**A. Count I – Section 1983**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Here, PCC does not at this point argue that it was not acting under color of state law, but rather

claims that Plaintiff cannot show the violation of a federal right within the statute of limitations for Section 1983 claims.

In actions brought under 42 U.S.C. § 1983 alleging a violation of civil rights or personal injuries, the state statute of limitations governing actions for personal injuries is to be applied. Wilson v. Garcia, 471 U.S. 261, 266 (1985). Since Wilson, the Sixth Circuit has consistently and repeatedly indicated that the one-year statute of limitations found in Tenn. Code. Ann. § 28-3-104 for civil actions "brought under the federal civil rights statutes" governs Section 1983 claims in Tennessee. See, Sharpe v. Cureton, 319 F.3d 259, 266 (6th Cir. 2003); Berndt v. Tennessee, 796 F.2d 879, 883 (6th Cir. 1986).

Plaintiff filed suit in state court on January 25, 2011. PCC's primary argument for dismissal is that most of the actions about which Plaintiff complains occurred in 2008, and that the only act identified in the Amended Complaint which occurred within a year of filing was Plaintiff's receipt of the statement dated November 4, 2010. PCC argues that receipt of a statement regarding the status of an account cannot support a claimed constitutional deprivation and, therefore, Plaintiff's Section 1983 claim is untimely.

The date on which a limitations period begins under Section 1983 is a question of federal law and ordinarily "starts to run when the plaintiff knows or has reason to know of the injury which is the basis of h[er] action." Edison v. State of Tennessee Dept. of Children's Serv., 510 F.3d 631, 635 (6th Cir. 2007). Nevertheless, in limited circumstances, an otherwise untimely Section 1983 action can proceed under a continuing violation theory. Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth., 480 F.3d 410, 416 (6th Cir. 2007) (noting that while continuing violation theory is normally applied in employment discrimination cases, it has also been applied in Section 1983

cases).

The continuing violation doctrine allows a court "to consider as timely all relevant violations, 'including those that would otherwise be time-barred.'" Id. (quoting, Sharpe, 319 F.3d at 267). "A continuing violation in a § 1983 action exists when there are continued unlawful acts, not by continued ill effects from the original violation." Kovacic v. Cuyahoga County Dep't of Children & Family Serv., 606 F.3d 301, 308 (6th Cir. 2010).

PCC insists that the November 4, 2010 statement was not a part of a continuous act, but rather was the result or effect of what Plaintiff labels as unlawful or excessive fees and charges. That is, any alleged overcharge was a discrete act which occurred on the date that the charge was assessed and the statement was a mere accounting of the past charges assessed.

At this point, the Court cannot accept PCC's narrow interpretation of the Amended Complaint. In ruling on a Motion to Dismiss, the Court is required to credit Plaintiff's version of the facts and to draw all reasonable inferences in Plaintiff's favor.

According to the Amended Complaint and the inferences to be drawn therefrom, Plaintiff should have been released from probation sometime in or around October 2009, yet she was still on probation when she filed her Complaint more than a year later, a circumstance that she attributes to PCC's unlawful actions.[2] Plaintiff also alleges that she, and others similarly situated, were

[2] PCC asserts that Plaintiff's probation was continued because she "failed drug tests on multiple occasions and otherwise violated the court ordered terms of her probation," and submits Violation of Probation Orders dated July 13, 2009 and July 26, 2010 to support that position. (Docket Nos. 12 at 1 & 12-1). While the Court can take judicial notice of court orders in ruling on a Motion to Dismiss, J.P. Silverton Indus. L.P. v. Sohm, 243 Fed. Appx. 82, 87 (6th Cir. 2007), those documents do not definitively address the reasons for the probation violation, other than to indicate that they were agreed revocations based upon unspecified grounds. Regardless, the Violation of Probation Orders do not resolve the question of whether PCC alleged actions were a factor, either directly or indirectly, in the extension of Plaintiff's probation which ultimately led to the revocation proceedings.

repeatedly harassed and intimidated into paying unlawful fees and charges, making it at least plausible that such tactics were employed against Plaintiff during the year she was still on probation before the filing of her suit in state court. Additionally, Plaintiff claims that she was required to pay excessive supervision fees monthly, fees which presumably extended throughout her probation period and, therefore, up until the filing of her Complaint. Given these plausible inferences from Plaintiff's allegations, it cannot be said, as a matter of law, that the November 4, 2010 statement was a mere accounting of past-due amounts, particularly when the statement itself shows that Plaintiff made a $20.00 payment on that date.

More generally, PCC cites Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir. 1992) for the proposition that Plaintiff does not adequately allege a Section 1983 claim. In Russo, the Sixth Circuit indicated that "[t]o successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." Id. at 1042. Here, Plaintiff identifies the constitutional rights allegedly violated by PCC – unlawful taking in violation of the Fifth Amendment and the denial of due process in violation of the Fourteenth Amendment. The factual allegations underpinning those claims are sufficiently stated in the Amended Complaint, particularly since there is no set formula for identifying a taking but instead requires "an *ad hoc*, factual inquiry into the circumstances of each particular case," Raceway Park, Inc. v. Ohio, 356 F.3d 677, 684 (6th Cir. 2004), and due process is a flexible concept involving fact specific inquiries. See, e.g., Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 634 (6th Cir. 2005); Gates v. City of Chicago, 623 F.3d 389, 404 (7th Cir. 2010); Ciambriello v. County of Nassau, 292 F.3d 307, 319 (2nd Cir. 2002).

**B. Count II -FDCPA**

As with the Section 1983 claim, PCC first moves to dismiss on the grounds that Plaintiff's Complaint was not filed within a year after the last allegedly unlawful act as required by the FDCPA's provision that an action must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Court need not linger over this argument because it agrees with PCC that Plaintiff's Amended Complaint does not state a claim which entitles her to relief under the FDCPA.

"The FDCPA is a broad statute," Purnell v. Arrow Finan. Serv. LLC, 303 Fed Appx. 297, 301 (6th Cir. 2008), enacted primarily to "eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e). A debt is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Therefore, the FDCPA applies "only to payment obligations of a (1) c*onsumer* arising out of a (2) *transaction* in which the money, property, insurance, or services at issue are (3) *primarily for personal, family, or household purposes*." Oppenheim v. I.C. System, Inc., 627 F.3d 833, 836 (11th Cir. 2010) (italics in original) (collecting cases).

A "transaction" is not defined in the FDCPA, but it has been held to connote a business deal between the parties and a consensual obligation. See, id.; Fleming v. Pickard, 581 F.3d 922, 926 (9th Cir. 2006). A mere obligation to pay, Oppenheim, 627 F.3d at 836, or an obligation thrust upon the debtor, Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1371 (11th Cir. 1998), does not constitute a transaction for purposes of the FDCPA. Instead, "the consensus judicial interpretation"

is "that the statute is limited in its reach 'to those obligations to pay from consensual transactions, where parties negotiate or contract for consumer-related goods or services.'" Turner v. Cook, 362 F.3d 1219, 1227 (9th Cir. 2004) (quoting, Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir. 1997)).

Here, even liberally construed, the Amended Complaint does not suggest that there was any sort of business deal or consensual understanding which resulted in Plaintiff incurring a debt to PCC. Instead, the facts alleged indicate the fees and charges were thrust on Plaintiff as a part of the commitment order which placed her on probation.

Plaintiff analogizes her FDCPA claim to collection of restitution efforts and cites United States v. Dolenz, 2007 WL 2781878 (5th Cir. Sept. 24, 2007) for the proposition that restitution payments are "covered by the FDCPA." (Docket No. 17 at 10). Dolenz is inapposite, however, because the federal government is given specific statutory authority to enforce restitution orders through, and in compliance with, the Federal (as opposed to Fair) Debt Collection Practices Act as codified in 28 U.S.C. § 3001 *et seq*. See, FDIC v. Todd Hughes Const. Corp., 2006 WL 2128667 at *1 n.1 (W.D. Tex. July 26, 2006) (noting that courts often use the same acronym for both the federal and fair debt collection acts). In the Court's view, Plaintiff's position as a probationer required to pay fines and fees is more analogous to individuals ordered to make child support payments, or subjected to a traffic fines or fee, neither of which arises out of a "transaction" within the meaning of 15 U.S.C. § 1692a(5). See, Mabe. v. G.C. Serv. Ltd., 32 F.3d 86, 88 (4th Cir. 1994); Reid v. American Traffic Solutions, Inc., 2010 WL 5289108 at *4 (S.D. Ill. Dec. 20, 2010).

Additionally, Plaintiff's FDCPA claim fails because the amounts she allegedly owed, and PCC tried to collect, were not primarily for personal, family or household purposes as required by

15 U.S.C. § 1692a(5). "'[A]t a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value.'" In re Westberry, 215 F3d 589, 593 n.4 (6th Cir. 2002) (citation omitted). The requirement that Plaintiff pay fines, fees and other expenses as a consequence or her being placed on probation is not the "type of *pro tanto* exchange which the statutory definition envisions." Id.; see, Beal v. Himmel & Berstein, LLP, 615 F.Supp.2d 214, 217 (S.D.N.Y. 2009)(obligation imposed by a court is not incurred to receive goods or services); Vaile v. Willick, 2008 WL 204477 at *6 (W.D. Va. Jan. 24, 2008) (debt owed as a result of a court order does not arise from a consumer transaction).

In deciding that dismissal of the FDCPA claim is appropriate, the Court recognizes that in the contract between Rutherford County and PCC, PCC agreed to "maintain full compliance with the FDCPA." (Docket No. 1-8 at 8). However, there is no suggestion that the agreement gave probationer third-party rights to enforce compliance, and any alleged breach is a matter between Rutherford County and PCC. See, Int'l Mark. & Rest. Inc. v. Belmont Univ., 2010 WL 4514980 at *4 (Tenn. Ct. App. Nov. 9, 2010) (citation omitted) ("In order to make a citizen a third-party beneficiary to a government contract, the contract 'must manifest[] a specific intent to grant individual citizens enforceable rights thereunder.'").

**C. Count III – TCPA**

PCC first moves for dismissal of Plaintiff's TPCA claim on the ground that she failed to file suit within one year of the discovery of any allegedly unlawful act or practice as required by Tenn. Code Ann. § 47-18-110. As with the FDCPA claim, the Court need not reach this issue because the Amended Complaint fails to set state a claim under the TPCA.

The TCPA was enacted "to protect consumers and legitimate business enterprises from those

who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce," and to ensure that "good faith dealings between buyers and sellers at all levels of commerce be had in this state[.]" Tenn. Code Ann. § 47-19-102. The statute is remedial in nature, and hence it "is to be liberally construed to protect consumers and others from those who engage in deceptive acts or practices." Morris v. Mack's Used Cars, 824 S.W.2d 538, 540 (Tenn. 1992).

Defendant argues Plaintiff cannot avail herself of the TCPA because she was not a consumer involved in a consumer transaction as contemplated by the Act. Plaintiff's only response is a conclusory assertion that "the provision of probation monitoring services and the collection of court costs relate to a consumer transaction," and "[t]herefore, the TCPA is applicable in this case." (Docket No. 17 at 11).

Even though the TCPA is to be broadly construed, by definition it only applies to "consumers" involved in a trade, commerce or consumer transaction. A "consumer" is defined as "any natural person who seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated or any person who purchases or to whom is offered for sale a franchise or distributorship agreement or any similar type of business opportunity." Tenn. Code Ann. § 47-18-103(2). "Consumer transaction means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." Id. § 47-18-103(19).

As a probationer ordered by a state court to report to PCC for oversight of her probation, Plaintiff cannot be said to have sought or acquired any goods, service, property, article, commodity,

thing of value, or business opportunity from PCC. To the extent that PCC may be viewed as providing a service through its monitoring and collection of fees, again those are services on behalf of Rutherford County, not Plaintiff. See, MACTEC, Inc. v. Bechtel Jacobs Co., 2007 WL 2385953 at *8 (E.D. Tenn. Aug. 16, 2007) ("Where the defendant was not selling anything to the plaintiff and the actions of the defendant did not affect the advertising, offering for sale, lease or rental, or the distribution of any goods, services, or property, no claim under the TCPA is properly pled").

**D. Count IV –Tort Claims**

In Count IV of the Amended Complaint, which is simply captioned "Tort Claims," Plaintiff alleges that PCC's abusive tactics violated "applicable state law" and "constitute intentional, willful, and/or reckless violations of state laws." (Amended Complaint ¶¶ 59-60). There is no identification of what those state laws are, or any indication of whether Plaintiff is seeking to assert common law and/or other state statutory claims in Count IV. Given the vagary of the claim, Defendant seeks dismissal, and Plaintiff has raised no arguments in opposition.

By its very terms, Rule 8 of the Federal Rules of Civil Procedure requires that a party set forth "a short and plain statement of the claims showing that the pleader is entitled to relief," which, in turn, allows a defendant to respond and "state in short and plain terms its defenses to each claim asserted against it[.]" Fed. R. Civ. P. 8(a)(2) & (b)(1)(B). The Rule is grounded on the notion that a party is entitled to fair notice of what the claim is and the grounds upon which it rests, and contemplates "'something more . . . than . . . a statement of fact that merely creates a suspicion [of] a legally cognizable right.'" Twombly, 550 U.S. at 555 (citation omitted).

Here, Plaintiff's position that the facts set forth in her Amended Complaint entitle her to relief under unidentified state laws is simply insufficient to provide fair notice to PCC so that it can

mount a defense to the "tort claims." See, In re YRC Worldwide, Inc. ERISA Litig., 2011 WL 1457288 at *7 (D. Kan. April 15, 2011) ("generic references" to "other federal laws" are "simply too conclusory" to give fair notice); Chappey v. Ineos USA, LLC, 2009 WL 790194 at *3 (N.D. Ind. Mar. 23, 2009) (generic complaint that defendant violated local, state and federal statutes does not provide fair notice). Plaintiff's failure to respond to PCC's motion on this score only leaves her "tort claims" further shrouded in mystery.

## III. MOTION TO STRIKE

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike from a pleading a "any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). This is a power which is often unexercised because striking material from a pleading is a "drastic remedy," Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001), and courts generally look with disfavor on Motions to Strike. See, Lopes v. Metro. Gov't. of Nashville, 2008 WL 913085 at *3 (M.D. Tenn. 2008); Baker v. Shelby County Gov't., 2008 WL 245888 at *3 (W.D. Tenn. 2008).

In this case, PCC moves to strike paragraphs 11, 13, 26 and 59 of the Amended Complaint. Paragraphs 11 and 13 basically allege that since at least 2003 members of Tennessee's Select Oversight Committee on Corrections have observed that allowing private companies to monitor probation provides opportunities for abuse. Those are merely historical observations and may be material insofar as they place the present controversy in context.

In paragraph 26 Plaintiff alleges that PCC utilizes backdated and otherwise misleading documentation, and in paragraph 59 that PCC engaged in abusive conduct which included "threats, intimidation, extortion, sexual assaults, sexual harassment, emotional abuse, physical abuse, and/or similar conduct, in violation of applicable state law." While such allegations are unflattering, they

are neither impertinent or scandalous, and presumably Plaintiff has a basis for making those claims.

## IV. CONCLUSION

On the basis of the foregoing, the Court will enter an Order granting in part and denying in part Defendant PCC's Motion to Dismiss. The Motion will be granted with respect to Plaintiff's FDCPA, TCPA and "tort" claims, but denied with respect to Plaintiff's claim under 42 U.S.C. § 1983. The Court will also deny PCC's Motion to Strike.

Kevin H. Sharp

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE